## GOURLEY v STATE

Ohio Appeals, 4th Dist, Washington Co

Decided July 27, 1931

C. D. Fogle, for Gourley.
E. F. Folger, for the State.

MIDDLETON, J.

An objection and a motion to strike out the answer were then interposed by counsel for the defendant and overruled by the court.

This evidence was admitted without any preliminary explanation of when and under what circumstances and in whose presence the alleged confession of Whiting was made. The record, however, discloses as a matter of fact that this confession was made to the sheriff in the presence of two parties, neither of whom was the defendant, and that the defendant was not only not present but did not know anything of the alleged confession until some hours after it was made and when there was an attempt to secure a confession from her on the strength of the fact that Whiting had confessed. So that when this part of Whiting's confession went to the jury in the manner it did it was wholly incompetent. If there were no further error in the case the admission of this testimony would require a reversal of the judgment.

In the case of **Neighbors v State, 121 Oh St, 525,** it is stated in the syllabus:

"1. The confession of an accomplice, made in the absence of the accused and subsequent to the commission of the crime, is not competent evidence against such accused to prove his participation in the crime.

2. Evidence that an accomplice made such a confession, and that in it he implicated the accused in the commission of the crime for the commission of which he is on trial, is incompetent."

It might be observed in this connection that the confession of Whiting referred to by the sheriff was a confession transcribed by a shorthand reporter and covered fourteen pages of typewritten matter. There is no evidence that the defendant had ever seen that confession at the time of the trial when the sheriff testified or that she at any time ever had the means of knowing its complete contents.

As the sheriff proceeded with his testimony it developed on cross examination that he had attempted to refresh his recollection of certain interviews and conversations between him and the defendant or the other two defendants by referring to certain transcripts of the statements made by these parties in their various interviews with him and other parties. It then developed that the sheriff and those interested had held a number of examinations of or interviews with the accused persons and that a stenographer had taken in shorthand what was said in part at least in these various talks and had transcribed the same, and that such transcripts were then in the possession of the prosecuting attorney. Counsel for the defendant demanded the

right to inspect these various transcripts, to which the prosecuting attorney objected. In his argument to the court against disclosing the contents of these transcripts the prosecuting attorney made the following statement, which is quoted for the purpose of illustrating the manifest incompetency of such transcripts as evidence. He said (Record, page 172):

"In the second place, part of the statement of Carrie Gourley was taken and part not. The stenographer was there part of the time and part of the time not. The transcript we have is only a small portion of Carrie Gourley's statement. The examination at other times is not in record at all. She only got a portion of it. She only talked in piecemeal. She would tell a story and back it up again, and her stories were in such form that nobody can tell anything about it. The evening she made a statement in the sheriff's office in the presence of the sheriff and myself, there is only a small part of that taken. In the first place, the interrogatories put to her were not taken because I was not at that time prosecuting attorney. Although I inquired of her there is only a small portion of that record of which she said. In the second place, the transcripts we have are part of the statement of Whiting and part of Harry Gourley and part of Carrie Gourley. What we have there is exactly what she said at the time it was taken but it is just patchwork of it. Part of it is admission and part denial, but she finally come to the point where she told what has been testified. It is not all of it by a long shot. That is the only reason why I would have any reason to withhold it from the defense, because it does not represent the testimony or the statement of Carrie Gourley. Now, by offering it or by attempting to offer it, which I still claim is not right—that they have no right to take this testimony until we offer it in evidence."

The foregoing remarks plainly indicate that the prosecuting attorney did not regard these various transcripts as competent evidence. Counsel for the defendant insisted on having the transcripts produced and the court directed their production. The transcripts were shown to counsel for the defendant and were identified by the stenographer who had made them. Later on and at the close of the state's case the transcripts were offered and admitted in evidence to the jury over the objections of the defendant and were then marked exhibits J, K and L.

The exhibit which contains a transcript of what it is contended was said by the defendant was marked exhibit J. This exhibit, like ancient Gaul, is divided into three parts. The first part appears to be a statement of Carrie Gourley made November 28, 1930, in the law library at the court house in Marietta, in the presence of the then prosecuting attorney Mr. Myers, the sheriff and the prosecutor elect Mr. Folger. The transcript of what was said at that meeting by the defendant covers thirteen pages and consists of questions by those present and the answers thereto of Mrs. Gourley, who in that interview did not state or admit any incriminating facts so far as we have been able to discover. The second part of the exhibit is denominated "Second inquiry of Mrs. Carrie Gourley." This inquiry was conducted by the sheriff at his office and in the presence of Charles Whiting and several other persons on December 3, 1930. The first page of the transcript of this interview is numbered 61 and there are only three pages of it. In the first two pages of said transcript nothing appears of consequence but on page numbered 63 we find the following:

"The sheriff talks to the witness 'out of the record' and witness states:

Well, I said go ahead and blame it on to Harry. I said, take the boy's word, what they say, and don't ask me no questions about it because I have got too much on my mind now and I can't stand nothing more.

Q. Mrs. Gourley, if the statements that your son Harry and Charles Whiting made here tonight, this third day of December—you think then they would be true, do you?

A. Yes. I had a talk with George today. I don't care what they do with me."

The George referred to here evidently was the defendant's husband. That part of the record which is quoted apparently has no connection whatever with what preceded it. It is manifest that it is only a part of something which led up to it and which preceded it in the grilling of the witness at that time. That part of it which refers to the talk of the sheriff "out of the record" gives no further explanation of what was said in that talk. If we are to believe what the defendant said in her testimony the remarks of the sheriff to her at that time were not at all complimentary.

Part third of this exhibit bears date of December 5 and is a transcript of what is designated as

"Statement of Carrie Gourley dictated by Fred C. Myers, prosecutor, in her presence and in the presence of Lillian Graessle

Gantz, court stenographer taking said dictation, on the fifth day of December, 1930, in the office of said stenographer. No other person present."

There is a little more than a page of this statement, which is referred to as a confession and the shorthand notes of which appear to have been signed by the defendant. While this confession indicates that the defendant was a party to the shooting there is no positive admission on her part of any active connection therewith.

All of the matter herein referred to as contained in exhibit J was permitted to go to the jury in evidence and was before them in their consideration of the case in the jury room. The admission of this mass of incompetent evidence as a whole was erroneous and was certainly prejudicial. The trial court appears to have permitted this evidence to go to the jury because of that part of the exhibit which follows the talk of the sheriff "out of the record" and the alleged confession of the defendant. There is no explanation or apparent reason for the admission of part one of this exhibit or for the admission of similar parts in the exhibit containing the interviews with Whiting other than his alleged confession. It was competent, of course, to show by the testimony of witnesses who were present what the defendant said in her alleged confession. It was competent for the stenographer who took the statements in shorthand to make a transcript thereof, and when such transcript was verified by the defendant it would have been competent in that form to submit to the jury. But the defendant was not testifying under oath when this statement was made, and the stenographer was not reporting any proceeding in court under oath. The stenographer's transcript of that statement was no more competent to go to the jury not verified by the defendant than would be the statement of any other witness who heard the conversation on that occasion and had then written what the defendant said and presented it as evidence to the jury.

Exhibit K appears to be a reproduction of what was taken down in part at the examination of Whiting. His first examination appears to have been held on November 29, 1930, and contains nothing of importance or competent as against the defendant. The next report on Whiting in exhibit K is under date of December 3, 1930, and this is claimed to have been the confession of Whiting. This alleged confession covers about fifteen pages of typewritten matter.

It was admitted in evidence against the defendant for the reason that the court held that the statement hereinbefore referred to and made by Mrs. Gourley immediately after the sheriff had talked to her "out of the record" amounted to an adoption or approval on her part of what had been confessed by Whiting and her son, and that the jury therefore had a right to know what Whiting and Harry Gourley had confessed. In his instructions to the jury the court said:

"There has also been introduced in evidence the alleged confessions of Harry Gourley and Charles Whiting. But these were admitted for a limited purpose only, and shall be limited by you strictly to the purpose for which they were received. There has been some evidence introduced tending to show that the defendant simply concurred in the statements of Harry Gourley and Charles Whiting after learning the purport of their statements. So far as the alleged confessions of Charles Whiting is concerned it is introduced solely for the purpose of enabling you to see what it was he said, to use in connection with the statements of the defendant in the consideration of the extent of her admissions or confessions, in the event that you find that Whiting made the statements alleged; and, in the further event that you find that the defendant voluntarily concurred in those statements, after knowing what they were."

We are not prepared to say that we can conclude from the evidence that there was any approval or adoption by the defendant of the statements made in the confessions of Whiting and the son as shown by the defendant's statement to the sheriff following his talk to her "out of the record." She had not seen the confession and the evidence wholly fails to show that she knew their full contents. We are very well satisfied, however, that in respect to the confession of Whiting the court had no legal right to use that confession for any purpose because it is manifest on the face of it that it was not a voluntary statement. That confession was made in the form of questions and answers. Whiting was interrogated by the sheriff, whose preliminary questions and Whiting's answers thereto are as follows:

"Q. What is your full name?

A. Charles Edward Whiting.

Q. Charlie, the statement that you are now about to make you make it voluntarily

and with your own free will."

The 'relator does not answer but moves his chair closer to sheriff, and sheriff repeats:

"Q. The statement you are about to make you make it voluntarily and of your own free will, without any hope or promise of reward?

A. I don't know what you mean.

Q. You have not been made any promises of any sort, have you?

A. I don't understand what that means.

Q. There didn't anyone promise you that you could go free or receive any benefit. ˙

A. Not any more than except you said you would take me up to the hospital and down to the post office and said you would turn me loose this afternoon."

The simplicity with which this witness, nineteen years of age, recites what the sheriff had said to him carries a conviction that the promise of the sheriff to him was the thing that moved and induced him to make his confession. Therefore, not only is the introduction of this alleged confession a violation of the rule announced in **Neighbors v State, supra,** but its further fatal infirmity lies in the fact that it is not a voluntary confession. If by reason of that fact it was not competent evidence against Whiting, and if it could not be used as a statement against his interests and against him, how may such confession be competent as against a third party and this defendant. It must be remembered that exhibit K was also with the jury in its deliberations.

The discussion of this case has gone to sufficient length. It is not without considerable reluctance that the judgment herein is reversed. There are other errors in the admission of evidence but it is not necessary to spend the time to refer to them. They are not of the importance of the ones we have discussed. In **Neighbors v State, supra,** it is said by Judge Robinson that a defendant, guilty or innocent, has the right to have his case heard on competent evidence. It is apparent, we think, that the defendant was denied that right in the instant case and the judgment is reversed and the case remanded to the Court of Common Pleas for further proceedings according to law.

Judgment reversed.

MAUCK, PJ, and BLOSSER, J, concur.